UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN JOSEPH, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>                                          Plaintiff,<br><br>v.<br><br>SEA WORLD LLC, et al.,<br><br>                                          Defendants. | Case No.:  24-cv-01937-AJB-SBC<br><br>**ORDER DENYING PLAINTIFF's MOTION TO REMAND CASE TO STATE COURT**<br><br>**(Doc. No. 13)** |

Before the Court is Plaintiff Steven Joseph's ("Plaintiff") motion to remand the instant action to state court. (Doc. No. 13.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matter suitable for determination on the papers. For the reasons set forth below, the Court **DENIES** Plaintiff's motion to remand.

I.      **BACKGROUND**[1]

On September 16, 2024, Plaintiff, a former non-exempt employee of Defendant, filed a putative wage and hour class action complaint in the Superior Court of the State of

---

[1]    The following facts taken from the complaint are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

1

California for the County of San Diego, Case No. 24CU011286C, on behalf of himself and other similarly situated hourly non-exempt employees of Defendant who worked in California. (*See* Doc. No. 1-3 at 5–51, Complaint. ("Compl.").) Plaintiff alleges nine causes of action: (1) Violation of Unfair Competition Laws; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Compensation; (4) Failure to Provide Required Meal Periods; (5) Failure to Provide Required Rest Periods; (6) Failure to Provide Accurate Itemized Statements; (7) Failure to Reimburse Employees for Required Expenses; (8) Failure to Pay Wages When Due; and (9) Failure to Pay Sick Pay Wages. (*Id.*)

On October 18, 2024, Defendant removed this action from the San Diego Superior Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1446, and 1453. (*See generally* Doc. No. 1.) One week later, Defendant filed its answer, generally denying the allegations and raising affirmative defenses. (Doc. No. 9.) On November 15, 2024, Plaintiff brought the instant motion to remand. (Doc. No. 13.)

## II.   LEGAL STANDARD

CAFA grants federal courts jurisdiction over certain class actions if the class has at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2), (5)(B); *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). As Plaintiff only challenges the amount in controversy element, the Court only addresses this issue.

A class action meeting CAFA standards may be removed to federal court. *See* 28 U.S.C. § 1332(d)(2); 28 U.S.C. § 1441(a). Because Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court," "no antiremoval presumption attends cases invoking CAFA[.]" *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). In fact, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Dart Cherokee*, 574 U.S. at 89 ("CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly

removed by any defendant.").

Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). "[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1197). "[T]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. However, if "a defendant's assertion of the amount in controversy is challenged[,] both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Arias*, 936 F.3d at 925 (quoting *Dart Cherokee*, 574 U.S. at 88); *see also Ibarra*, 775 F.3d at 1197 ("Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, 'the court then decides where the preponderance lies.'" *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020) (quoting *Ibarra*, 775 F.3d at 1198).

"A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty." *Id.* Instead, "a defendant satisfies the amount-in-controversy requirement under CAFA if it is reasonably possible that it may be liable for the proffered punitive damages amount." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). The amount in controversy or "'[a]mount at stake' does not mean likely or probable liability; rather, it refers to *possible* liability." *Id.* (emphasis added).

///

## III. DISCUSSION

Plaintiff contends the amount in controversy does not meet or exceed CAFA's $5,000,000 amount in controversy requirement, making remand required. (*See generally* Doc. No. 13-1.) Specifically, Plaintiff asserts that the declaration Defendant included with its notice of removal is "insufficient" and "unreliable." (*Id.* at 8, 14–17; Doc. No. 17 at 4–5.) Second, Plaintiff contends Defendant's assumptions regarding violation rate and wait time penalties are unreasonable. (Doc. Nos. 13-1 at 9–17; 17 at 4–6.) Finally, Plaintiff asserts that Defendant "fails to meet its burden as to any of Plaintiff's additional claims" because Defendant does not analyze or provide support for the other eight claims meeting the amount in controversy. (Doc. No. 13-1 at 17–18.) To support his arguments, Plaintiff asserts that there is a "'strong presumption' that the amount in controversy is insufficient to confer federal jurisdiction," essentially arguing that there is a presumption against removal. (Doc. Nos. 13-1 at 6–7.)

In opposition, Defendant argues Plaintiff's motion lacks merit because (1) there is no antiremoval presumption in CAFA cases; (2) Defendant's calculations are supported by competent evidence sufficient to prove the amount in controversy; and (3) Defendant's assumptions are reasonable based on the language of Plaintiff's complaint. (*See generally* Doc. No. 15.)

### 1. No Antiremoval Presumption

First, Plaintiff argues Defendant "attempt[s] to shift the burden of proof" and "conflates the standard for removal with the standard to oppose Plaintiff's remand motion." (*See* Doc. No. 17 at 6–8.) In support, Plaintiff relies on case law setting forth an antiremoval presumption in non-CAFA cases, (Doc. Nos. 13-1 at 7 (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) and *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); 17 at 7 ("Defendant, however, has not overcome the "strong presumption" that the amount in controversy is insufficient to confer federal jurisdiction.")), and misstatements of the law (*see id.* at 7–8 (citing *Dart Cherokee*, 574 U.S. at 84)). To the latter point, Plaintiff asserts that "as [he] specifically pled that the aggregate claim is under

$5 million[,] . . . Plaintiff's assertion that this case involves an amount in controversy of less than $5 million is presumed to be correct." (*Id.* at 7 (citing *Dart Cherokee*, 574 U.S. at 84); Doc. No. 13-1 at 6.)

Plaintiff attempts to impose, both explicitly in his legal standard and implicitly in his arguments, a presumption against CAFA jurisdiction, relying on the exact case law the Ninth Circuit has addressed as inapposite to CAFA. *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (stating the lower court was "incorrect" to apply the "skepticism and resistance" of *Gaus* to CAFA). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89.

Moreover, to presume a plaintiff's alleged damages correct when challenged by the defendant in a notice of removal would, in effect, create a presumption against CAFA where a plaintiff artfully prays for damages not to exceed $5 million. *Cf. Ibarra*, 775 F.3d at 1197 ("Whether damages are unstated in a complaint, or, *in the defendant's view are understated*, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged. . . . [T]his rule is not altered *even if* plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million.") (emphasis added); *see also Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592–93 (2013) (holding that a class action plaintiff's stipulation in the complaint not to seek aggregate damages in excess of $5 million cannot bar CAFA jurisdiction).

Rather, the Court will consider the evidence put forth by the parties, assess the reasonableness of Defendant's assumptions, and then decide where the preponderance lies. *See Harris*, 980 F.3d at 701.

### 2. Reliability of the Evidence

Second, Plaintiff contends this Court should reject Defendant's calculations as based on "unreliable declaration testimony." (Doc. Nos. 13-1 at 8–17; 17 at 2, 4–8.) Specifically,

Plaintiff asserts that the declaration "fails to provide any explanation as to why it is reasonable to assume [a 100% violation rate] to all 9,193 of the former employees who are potentially the subject of this claim." (Doc. No. 13-1 at 16.) Plaintiff further asserts that Defendant has not provided evidence addressing how many terminated employees were full- versus part-time, what that average number of hours worked by the class members was, and the class members' rates of pay. (*Id.*)

In attempting to pigeon-hole the instant action into the circumstances of other unpublished, district court cases, Plaintiff makes incorrect factual statements. In this action, Defendant's notice of removal was supported by the declaration of Christopher Hagerman, a Business Analyst working for Defendant. (Doc. No. 1-5, Declaration of Christopher Hagerman ("Hagerman Decl.").) Hagerman avers under penalty of perjury that he "reviewed or caused to be reviewed records for each non-exempt employee employed at SeaWorld San Diego from September 16, 2021 to September 25, 2024." (Hagerman Decl. ¶ 4.) Based on this review, Hagerman further avers that 9,193 non-exempt putative class members were terminated during that time period, that those individuals worked an average of 6.63 hours per day, and that they earned an average hourly wage of $17.50. (*Id.*) Hagerman's personal knowledge of Defendant's business records, which he had access to and reviewed as part of his duties as a Business Analyst, provides sufficient foundation for the evidence offered in his declaration. *See Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3702934, at *4 (S.D. Cal. Feb. 4, 2022) (sufficient foundation laid by the defendant's senior director of financial shared services attesting to knowledge of business records based on personal review).

Additionally, Plaintiff asserts that, in order to meet its burden, Defendant must provide in its opposition "actual figures" and "real evidence" supporting a 100% violation rate. (Doc. No. 17 at 4–6.) Plaintiff's argument in essence is that Hagerman's declaration is insufficient because it does not provide concrete proof from Defendant's business records that Defendant violated the law. Although the parties are to submit "summary-judgment-type evidence" to support or oppose a motion to remand, a motion to remand is

not itself subject to the summary judgment standard. *See e.g.*, *Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1236 (C.D. Cal. 2019) ("While Defendants bear the burden of establishing removal was proper, they need not prove Plaintiffs' case to do so."); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150–51 (S.D. Cal. 2018) ("Plaintiff appears to argue Defendant cannot rely on Ms. Hall's declaration without producing evidence upon which Ms. Hall bases her declaration. Contrary to Plaintiff's argument, Defendant need not produce business records setting forth the precise number of employees in the putative class and the precise calculation of damages alleged to meet its burden regarding the amount in controversy. Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden.") (citations and quotation marks omitted).

Accordingly, the Court finds Hagerman's declaration to be "summary-judgment-type evidence relevant to the amount in controversy [that Defendant filed] at the time of removal." *See Ibarra*, 775 F.3d at 1197. Although Plaintiff baldly claims that the declaration is "unreliable," Plaintiff fails to provide any support substantiating such a claim. As such, the Court will consider Hagerman's declaration in assessing the reasonableness of Defendant's assumptions.

### 2. Reasonableness of Defendant's Calculations

Third, Plaintiff argues this Court should reject Defendant's calculations as based on "unsupported," "unreasonable" assumptions. (Doc. Nos. 13-1 at 8–17; 17 at 2, 4–8.) Specifically, Plaintiff asserts that Defendant provides no reasonable basis for a 100% violation rate where "every single one of the 9,193 class members are [sic] owed the maximum amount of waiting time penalties in the collective amount $31,998,534.75." (Doc. No. 13-1 at 9, 16.)

In its notice of removal, Defendant's sole assertion regarding the amount in controversy is based on Plaintiff's eighth cause of action, which alleges that Defendant failed to timely pay all earned wages at the time of separation of employment. (Doc. No. 1 at 4–5.) Defendant states that between September 16, 2021, to September 25, 2024, at least

1  9,193 non-exempt employees' employment was terminated, their average hourly rate of
2  pay was approximately $17.50, and they worked an average of 6.63 hours per day. (*Id.* at
3  5.) Defendant asserts, based on the unqualified allegations in Plaintiff's complaint, that it
4  failed to pay each class member their outstanding wages for the full 30-day statutory
5  period—a 100% violation rate. (*Id.*) Using these calculations, Defendant presents an
6  amount in controversy totaling at least $31,998,534.75. (*Id.*)

7        In its opposition to the instant motion, Defendant asserts that its calculations
8  regarding the waiting time penalties and the 100% violation rate are reasonably and
9  logically based on the plain language of Plaintiff's complaint, which alleges maximum
10 recovery. (Doc. No. 15 at 9–12.) Because of this, Defendant argues the 100% violation rate
11 and waiting time penalties are proper, but notes that even a 16% violation rate would satisfy
12 the amount in controversy requirement. (*Id*. at 12–13.) Defendant further justifies its 100%
13 violation rate by relying upon *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141,
14 1149 (C.D. Cal. 2010), which holds a 100% violation rate as acceptable if a more precise
15 violation rate is not alleged. (Doc. No. 15 at 8 (quoting *Coleman*, 730 F. Supp. 2d at 1149).)

16       Although Plaintiff's complaint does not expressly assert that *all* class members were
17 not tendered all wages as required by law at termination, the complaint asserts once that
18 *many* were and otherwise does not qualify or otherwise limit the putative class. (Compl. ¶
19 111.) Additionally, Plaintiff alleges repeatedly that Defendant had a "*practice, policy and
20 procedure* to deny paying the Plaintiff and the other [putative class] members . . . *all* of
21 their vested vacation and holiday vacation and holiday time," that Defendant's "*uniform
22 practice and policy* of failing to pay the [putative class m]embers for *all* vested vacation
23 and holiday time accumulated at employment termination violated and continues to violate
24 Section 227.3 of the California Labor Code," and that these violations occurred "at *all*
25 times" during the class period. (*Id.* (emphasis added).)

26       The Court agrees with Defendant that Plaintiff's broad language supports a 100%
27 violation rate at this time. *See Coleman*, 730 F. Supp. 2d at 1149–50 ("Courts have assumed
28 a 100% violation rate in calculating the amount in controversy when the complaint does

not allege a more precise calculation . . . Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."). Even considering the initial qualifier of "many," a violation rate of more than 16% is reasonable, which would still exceed the required amount in controversy.

Considering that Defendant's assumption of violation rates is reasonable, the Court next turns to whether Defendant's method of calculation is reasonable. Defendant's calculations consist of taking average values set forth in Hagerman's declaration and multiplying them to estimate the amount in controversy. This is an accepted method of calculating potential waiting time penalties for determining CAFA jurisdiction. *See Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 985–96 (S.D. Cal. 2005) ("The potential amount of 'waiting time penalties' at stake can be calculated by multiplying the number of former employees in the proposed class by thirty days' wages; thirty days' wages can be calculated by multiplying the average number of hours worked by the average rate of pay.").

While Defendant bears the burden of proof to establish by a preponderance of the evidence whether the amount in controversy requirement is satisfied, both parties had the opportunity to submit proof regarding the amount in controversy. *See Ibarra*, 775 F.3d at 1199. Plaintiff submits no evidence to undermine the reasonableness of Defendant's calculations.

Accordingly, Hagerman's declaration, the broad language of Plaintiff's complaint, and Defendant's reasonable assumptions derived therefrom provide sufficient evidence to demonstrate by a preponderance of the evidence that the amount in controversy exceeds CAFA's minimum threshold. *See also Branch v. PM Realty Grp., L.P.*, 647 Fed. App'x 743, 744 (9th Cir. 2016) (finding a declaration submitted by the defendant "attesting to the number of nonexempt hourly employees, the number of weeks they worked, and their average hourly rate of pay" and reasonable assumptions based on those numbers sufficient evidence that the amount in controversy exceeded $5 million). Defendant has met its

burden to demonstrate that federal jurisdiction is proper.

### 4. Plaintiff's Other Claims

Finally, Plaintiff asserts without any legal basis that the case should be remanded because Defendant fails to analyze or place an amount in controversy as to any of Plaintiff's additional claims. (Doc. No. 13-1 at 17–18.) The jurisdictional requirement for the amount in controversy is based on the action not on the individual claims. Plaintiff's argument fails.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand. The Court **ORDERS** the parties to jointly contact Magistrate Judge Chu's chambers within **three days** of the electronic docketing of this Order to request the Early Neutral Evaluation and Case Management Conference be reset. (*See* Doc. No. 19.)

**IT IS SO ORDERED.**

Dated: January 22, 2025

Hon. Anthony J. Battaglia
United States District Judge