

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN JOSEPH, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>SEA WORLD LLC, et al.,<br><br>                                    Defendants. | Case No.:  24-cv-01937-AJB-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CLASS AND UCL CLAIMS**<br><br>**(Doc. No. 30)** |

Before the Court is Defendants Sea World LLC and Seaworld Parks & Entertainment, Inc.'s ("Defendants") motion to compel arbitration and to dismiss Plaintiff Steven Joseph's ("Plaintiff") class and unfair competition law ("UCL") claims. (Doc. No. 30.) For the reasons set forth below, the Court **GRANTS** Defendants' motion to compel Arbitration of Plaintiff's individual claims, **GRANTS** Defendants' motion to dismiss Plaintiff's class claims, and **DENIES** Defendants' motion to dismiss Plaintiff's UCL claim.

## I.      BACKGROUND

Plaintiff, a former Security Officer and then Sergeant at Sesame Place San Diego, brings this putative class action alleging Defendants violated various wage-and-hour laws

with regard to hourly non-exempt employees who worked in California. (*See generally* Doc. No. 1-3 at 5–51, Complaint "Compl.") Upon his hiring,[1] Plaintiff was onboarded by Defendants in July 2022. (Doc. Nos. 30-1 at 5; 39 at 9.) As a part of the onboarding process, Defendants assigned Plaintiff a unique employee identification number and presented Plaintiff with the SeaWorld Parks & Entertainment Dispute Resolution Program Policy (Doc. No. 30-3 at 5–33, "DRP"),[2] the Dispute Resolution Program Receipt and Acknowledgment form (Doc. No. 30-3 at 34–36, "DRP Acknowledgment"), and the Intellectual Property and Confidentiality Agreement (Doc. No. 39-2 at 3–8, "IPCA"), among others. (*See* Doc. Nos. 30-1 at 6; 39 at 9; McCarty Decl. ¶ 6.)

The DRP lays out a three-tier dispute resolution process consisting of "Level 1 – Local Management Review; Level 2 – Nonbinding Mediation (if the dispute is a covered claim); and Level 3 – Binding Arbitration (if the dispute is a covered claim)." (DRP at 9.) "Covered claims" are "claims relating to or arising out of the employment relationship that: (A) the Company may have against an Employee, including breach of confidentiality and/or (B) the Employee may have against the Company . . . where the Employee alleges . . . illegal conduct on the part of the Company including, but not limited to, [*inter alia*] . . . (8) Claims of violation of public policy[] and (9) Claims for unpaid wages under the Fair Labor Standards Act or state law." (DRP at 12.) "Excluded claims" include "[c]laims that seek to establish, modify or object to the Company's policies or procedures . . . ." (*Id.*) With regard to Level 3, the DRP "constitutes a written agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections 1–14." (DRP at 13.)

---

[1]    The Court notes there is a discrepancy between hiring date cited by both Plaintiff's and Defendants' briefing and the employment years stated in Plaintiff's Complaint. (*Compare* Doc. No. 30-1 at 5 *and* Doc. No. 39 at 9 *with* Compl. ¶ 4 ("PLAINTIFF was employed by DEFENDANT in California from February of 2021 to April of 2024 . . . .").)

[2]    Defendants attached two identical copies of the DRP to the instant motion. (*Compare* Doc. No. 30-3 at 5–33 *with* Doc. No. 30-3 at 5–33.) For clarity, the Court will cite to the latter, whose accuracy was verified by Jason McCarty, Information Technology Direct of Back Office Systems for Defendants. (*See* Doc. No. 30-3, Declaration of Jason McCarty, "McCarty Decl.")

Finally, the DRP lays out procedural rules for arbitration covering how to submit covered claims, the selection of a qualified neutral arbitrator, the location and timing of the hearing, discovery, evidence, applicable law, and more. (*Id.* at 18–25.)

On July 7, 2022, Plaintiff electronically signed the DRP Acknowledgment using unique login credentials which authenticated his identity. (Doc. Nos. 30-1 at 6; 39 at 9; McCarty Decl. ¶ 6; *see also* DRP Acknowledgment.) The DRP Acknowledgment summarizes and links to the DRP, after which Plaintiff signed the following paragraph:

> By my signature below, I acknowledge that I have received a copy of the written document for the DRP. I further acknowledge that the DRP policy constitutes a binding legal agreement between me and the Company, and that I have read the policy and this acknowledgment carefully. I understand and agree that by continuing my employment with the Company, I am agreeing as a condition of my employment to abide by the DRP policy and procedures, to submit all covered claims to the DRP, to waive all rights to a trial in court before a judge or jury on such claims, and to accept an arbitrator's decision as the final, binding, and exclusive determination of all covered claims. In addition, I understand that the Company is also accepting and agreeing to be bound by and to comply with the requirements and procedures of the DRP policy. I further acknowledge that the DRP does not change the employment-at-will relationship between me and the Company.

(DRP Acknowledgment at 35.) The executed DRP Acknowledgment was then stored on Defendants' document management software. (Doc. No. 30-1 at 6; McCarty Decl. ¶ 6.)

On September 16, 2024, Plaintiff initiated the instant action bringing nine causes of action on behalf of himself and the putative class. (*See* Doc. No. 1-3 at 5–51, "Compl.")

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). There is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according

to their terms so as to facilitate streamlined proceedings."). The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Accordingly, under the FAA, the Court must, as a general matter, determine "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130. If the two factors are met, the Court must enforce the arbitration agreement in accordance with its precise terms. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012), *on reh'g en banc,* 718 F.3d 1052 (9th Cir. 2013). These gateway issues, however, "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan,* 796 F.3d at 1130 (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024), *cert. denied sub nom. Live Nation v. Heckman*, No. 24-1145, 2025 WL 2823733 (U.S. Oct. 6, 2025). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

///

## III.    DISCUSSION

Defendants move to compel arbitration of Plaintiff's individual claims pursuant to the DRP and to dismiss Plaintiff's class and UCL claims. (*See generally* Doc. No. 30-1.) Plaintiff opposes the motion, arguing that his claims are expressly excluded from arbitration by the DRP and, alternatively, the DRP is unconscionable. (*See generally* Doc. No. 39.) The Court addresses each issue in turn.[3]

### A.    Whether the Agreement Encompasses the Claims at Issue

#### 1.    Plaintiff's Individual California Labor Code Claims

Defendants state the DRP mandates arbitration of Plaintiff's individual claims because they "directly arise from Plaintiff's employment with SeaWorld" and "seek[] to recover unpaid wages, including minimum wages, overtime wages, meal period premiums, rest period premiums, and sick pay, along with derivative penalties for untimely payment of wages and inaccurate itemization of unpaid wages under state law." (Doc. Nos. 30-1 at 6–7; 42 at 5–6.) Following Defendants' logic, the claims are expressly covered under category B.9 of the Covered Claims. (*See* DRP at 12.)

In opposition, Plaintiff asserts his claims all "seek to modify and/or object to Defendant's policies and procedures," which are excluded from the DRP. (Doc. No. 39 at 10–11.) Specifically, Plaintiff argues that "[e]very cause of action alleged in Plaintiff's Complaint is based on harm caused to him and the Class Members as a result of Defendant's company policies and procedures." (*Id.* at 11.) Because the claims include excluded components—Defendants' policies and procedures and injunctive relief therefrom—Plaintiff asserts the claims in their entirety should be considered excluded. (*Id.* at 9–10 (relying on *Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023), *review denied* (Sept. 13, 2023)).)

The Court is not persuaded by Plaintiff's recharacterization of wage-and-hour

---

[3]    As a threshold matter, the parties agree that the Court should decide the arbitrability of the DRP. (*See* Doc. Nos. 30-1 at 13; 39 at 11.)

violation claims seeking damages as challenges to Defendants' policies and procedures. Although the Complaint references Defendants' policies and procedures in the claims, at the foundation, these are claims for unpaid wages under California state law. (*Compare* Compl. ¶¶ 62–118 *with* DRP at 12.) This is highlighted by the relief sought for all eight non-UCL claims: compensatory damages, liquidated damages, interest, and penalties. (Compl. at 49–50.) Although it may be the practical implication of such claims, Plaintiff does not explicitly seek Defendants to *change* their policies or procedures in bringing these claims. Moreover, as Defendants note (*see* Doc. No. 42 at 6–7), to rule otherwise would convert every wage-and-hour claim from covered to excluded, thereby making the distinction meaningless. Accordingly, the Court finds that the second through ninth claims fall within the scope of the arbitration agreement as covered claims pursuant to category B.9.

### 2.    Plaintiff's Class Claims

Having found the non-UCL individual claims covered, the Court turns to Defendants' arguments regarding those brought on a representative basis. Defendants argue that because the DRP and IPCA "are silent on the availability of class arbitration" and "the parties did not affirmatively agree to submit class claims to arbitration, [Defendants] cannot be compelled to do so." (Doc. No. 30-1 at 12–13.) Plaintiff, relying solely on his recharacterization of the wage claims, fails to substantively address this argument. (*See generally* Doc. No. 39.)

"Arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (cleaned up) (emphasis in original). Because of "'crucial differences' between individual and class arbitration, . . . courts may not infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.'" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)) (emphasis in original). "Silence is not enough; the 'FAA

requires more.'" *Id.* (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 687).

Here, the agreement is silent on the issue of class arbitration. (*See generally* DRP.) Because the parties did not affirmatively consent to class arbitration, the parties cannot be compelled to submit their dispute to class arbitration. *See Stolt-Nielsen S.A.*, 559 U.S. at 687; *see also, e.g.*, *Freeman v. Seaworld Parks & Ent., Inc.*, No.: 22-cv-01127-AJB-DEB, 2023 WL 6370632, at *5 (S.D. Cal. May 9, 2023) (ruling Sea World's DRP Policy and Agreement do not permit class wide arbitration). Rather, Plaintiff must arbitrate his California Labor Code claims against Defendants on an individual basis.

### 3.    Plaintiff's UCL Claim

Defendants do not separately address Plaintiff's UCL claims. (*See generally* Doc. Nos. 30; 42.) Rather, Defendants argue these claims are "derivative" and lump them with Plaintiff's other individual and class claims. (*See* Doc. No. 30-1 at 5, 12–13.) Similarly, Plaintiff does not separately address the UCL claims (*see generally* Doc. No. 39); however, Plaintiff relies on *Jack*, a case involving *inter alia* a UCL claim, in support of his argument that all his claims are excluded from arbitration. *See supra* § III.A.1.

In *Jack*, the Court of Appeal applied California's "*McGill* rule" that "an arbitration agreement is invalid and unenforceable insofar as it purports to waive a claimant's statutory right to seek public injunctive relief in any forum." *Jack*, 91 Cal. App. 5th at 1208 (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017)). Finding the arbitration provision at issue to do so, the *Jack* court turned to the severability clause with regard to the plaintiff's claims for public injunctive relief, including a UCL claim. *Id.* at 1208–09. The court disagreed with the defendant that the severability clause should carve only out the remedy to be severed and require arbitration of the liability, damages, and non-public injunctive relief. *Id.* at 1209–10. Instead, the court severed the entirety of the causes of action seeking public injunctive relieve, permitting those claims to proceed in court. *Id.* at 1210.

In opposition, Defendants dismiss Plaintiff's argument by stating that the DRP does not limit access to injunctive relief or contain a wholesale waiver of PAGA claims, unlike the agreement at issue in *Jack*. (Doc. No. 42 at 7 n.2.)

Unlike Plaintiff's other claims, the UCL cause of action is more persuasively framed as an objection to Defendants' policies or procedures. (*See* DRP at 12 (listing as excluded "[c]laims that seek to establish, modify or object to the Company's policies or procedures").) Plaintiff's UCL cause of action alleges that Defendants engage in an unlawful, deceptive, and fraudulent business practice of violating state and federal labor laws by implementing non-compliant policies. (Compl. ¶¶ 47–61.) For relief, Plaintiff seeks restitutionary disgorgement and an order enjoining Defendants from engaging in similar unlawful conduct. (*See* Compl. at 49.) Considering that Plaintiff seeks to enjoin Defendants from engaging in their current practices and implementing the current policies, the Court finds Plaintiff's first cause of action is an excluded claim.[4]

## B.    Whether the Agreement Is Enforceable

Plaintiff further argues the DRP is unenforceable because it is unconscionable. (Doc. No. 39 at 11–31.) Defendants respond that the DRP is procedurally and substantively fair, but if any portion is found to be unconscionable, the Court may sever the unconscionable portion and enforce the remainder of the arbitration provision. (*See generally* Doc. No. 42.)

"Under the Federal Arbitration Act, generally applicable contract defenses, including unconscionability, may invalidate an arbitration agreement." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). "Under California law, a contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ronderos*, 114 F.4th at 1089. "To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both need not be present in the same degree." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citation omitted). Rather a "sliding scale is invoked," such that "the more substantively oppressive

---

[4]    Any potential argument Defendants could have made that Plaintiff's UCL claim is covered as a "[c]laim[] of violation of public policy" is not addressed herein because Defendants fail to make any such argument. (*Compare* DRP at 12 *with* Doc. Nos. 30 *and* 42, *generally*.)

the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).[5]

### 1.    Procedural Unconscionability

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). "'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice,' while 'surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

Plaintiff argues the DRP and IPCA are procedurally unconscionable due to both oppression and surprise. With regard to oppression, Plaintiff argues that both the DRP and IPCA are contracts of adhesion presented on a "take-it-or-leave-it" basis without opportunity to negotiate. (Doc. No. 39 at 13; *see also* Doc. No. 39-1, Declaration of Steven Joseph, "Joseph Decl.", at ¶ 4.) Plaintiff further asserts he was "pressured into signing it promptly, before being considered for employment and beginning work." (Doc. No. 39 at 14; Joseph Decl. ¶¶ 3–4.) Finally, Plaintiff asserts that, because the DRP is "silent on Plaintiff's ability to consult with an attorney before being bound," Defendants "did not permit Plaintiff to review the Agreement with an attorney[.]" (Doc. No. 39 at 14; Joseph Decl. ¶ 6.) With regard to surprise, Plaintiff states the DRP is a long document, "written in extremely small font" and filled with "statutory references and legal jargon," the intricacies

---

[5]    Defendants assert that "California's *Armendariz* standards are preempted by the FAA[] and are therefore not relevant to the Court's ruling on this motion." (Doc. No. 30-1 at 10 n.3 (citing *Concepcion*, 563 U.S. at 346–47 n.6).) To broadly read *Concepcion* as deeming the entire unconscionability doctrine in conflict with or otherwise frustrating the purpose of the FAA is untethered from the Supreme Court's language and over a decade of subsequent interpretation.

and limitations of which he was unfamiliar. (Doc. No. 39 at 14–15; Joseph Decl. ¶ 5.) Moreover, the DRP was "presented with the litany of other onboarding documents/acknowledgments that Plaintiff was required to sign[.]" (Doc. No. 39 at 14; Joseph Decl. ¶¶ 3–4.)

Defendants concede the DRP is a contract of adhesion. (Doc. No. 42 at 12.) However, Defendants argue Plaintiff was not rushed to complete the onboarding and there was a representative available to answer questions regarding the DRP. (*Id.* at 13.) Defendants state they have designed the DRP to enhance readability and allow applicants to reschedule their onboarding if they wish to have someone help them review their documents. (*Id.* at 14.)

The Court agrees with both parties that the DRP is a contract of adhesion. *See Ronderos*, 114 F.4th at 1089 ("A contract of adhesion is a standardized contract imposed and drafted by the party of superior bargaining strength and gives the subscribing party only the opportunity to adhere to the contract or reject it.") (internal quotation marks and citation omitted). Thus, the DRP exhibits some degree of procedural unconscionability due to the presence of oppression. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) ("[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability."); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."). The Court finds unpersuasive Plaintiff other arguments asserting oppression, including the leap that silence regarding consulting counsel regarding the DRP means that Defendants prevented Plaintiff from doing so. Plaintiff cites no authority for such a tenuous assertion. The Court finds that there is no more oppression than a typical contract of adhesion in a pre-employment on-boarding setting. *See Armendariz*, 24 Cal. 4th at 115 ("[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and

necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.").

However, based on the parties' representations and the Court's independent review of the DRP, there is no surprise with regard to arbitration. The binding arbitration provision is referenced throughout the DRP, is listed on the "Dispute Resolution Program" flow chart, and is extensively explained in its dedicated section entitled "Procedural Rules for Level 3." (*See generally* DRP.) Additionally, despite Plaintiff's characterization of the agreement as using "extremely small font," the Court notes that the DRP is clearly labeled with large headings, includes significant white space between article provisions, and uses charts and tables to provide additional clarity in organizing information. (*See generally id.*)

Having found some procedural unconscionability due to the DRP's adhesive nature, the Court turns next to whether there is sufficient substantive unconscionability to render the DRP's arbitration provision unenforceable. *See Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1115 (E.D. Cal. 2023) ("[I]f an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforced unless the degree of substantive unconscionability is high.") (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)); *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 494 (2024) ("[A]lthough adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms.").

## 2.    Substantive Unconscionability

"Substantive unconscionability examines the fairness of a contract's terms." *Lim*, 8 F.4th at 1001 (quoting *OTO*, 8 Cal. 5th at 129). "[T]he standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause." *Valencia Holding Co.*, 61 Cal. 4th at 912. "The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not

impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287–88 (2016) (internal quotation marks omitted).

Plaintiff challenges the DRP and the IPCA as substantively unconscionable on myriad grounds. (Doc. No. 39 at 15–31). The Court will address each of Plaintiff's concerns in turn.

### i.    Reading the DRP with the IPCA

First, Plaintiff asserts that the DRP must be considered in conjunction with the IPCA for purposes of determining substantive unconscionability. (*See* Doc. No. 39 at 12, 28–29 (relying on *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 491 (2023)).

Instead of addressing the propriety of analyzing the DRP and the IPCA in conjunction for purposes of determining unconscionability, Defendants only challenge the applicability of the *Alberto* court's ultimate finding of unconscionability to the instant circumstances. (*See* Doc. No. 42 at 7–8.)

California Civil Code § 1642 provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. In applying § 1642, the *Alberto* court found that an arbitration agreement and a confidentiality agreement should be considered together because they: (1) "were executed on the same day"; (2) "were both separate aspects of a single primary transaction—[the employee's] hiring"; and (3) "both governed, ultimately, the same issue—how to resolve disputes . . . arising from [the employee's] employment." 91 Cal. App. 5th at 490–91. As with *Alberto*, here Plaintiff executed the DRP and IPCA on the same day, execution of both was required as a part of Plaintiff's hiring, and both address disputes that may arise from Plaintiff's employment.

Based on *Alberto* and Defendants' lack of opposition, the Court finds that the DRP and IPCA are to be construed together. *See, e.g.*, *Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1047 (N.D. Cal. 2024).

///

### ii.    Mutuality

Plaintiff asserts the agreements are unconscionable because the DRP and IPCA lack mutuality. (Doc. No. 38 at 16–17, 28–29.) First, Plaintiff argues that "the DRP primarily requires arbitration of the types of claims only employees bring against employers" and forces Defendants only to arbitrate an employee's beach of the DRP's confidentiality requirements. (Doc. No. 39 at 16–17.) Specifically, Plaintiff states that "[t]he only Company claims that are identified as being subject to the DRP are those the Company may have against an Employee 'for breach of confidentiality.'" (*Id.* at 17.) Second, Plaintiff argues that the IPCA lacks mutuality because it "allows Defendant to obtain an injunction in court, without having to show irreparable harm or no adequate remedy[.]" (*Id.* at 28–29 (relying on *Alberto*, 91 Cal. App. 5th at 492).)

"[I]f an agreement singles out certain claims for arbitration, there must be mutuality." *Ramirez*, 16 Cal. 5th at 495 (citation omitted); *see also Ronderos*, 114 F.4th at 1094 ("Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability."). "The agreement cannot require one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Ramirez*, 16 Cal. 5th at 495 (citation omitted). "Not all one-sided terms are unconscionable, but the party seeking to enforce a one-sided term must provide at least some reasonable justification for such one-sidedness based on business realities." *Ronderos*, 114 F.4th at 1094 (citation omitted). "Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Ramirez*, 16 Cal. 5th at 495 (quoting *Armendariz*, 24 Cal.4th at 118).

Here, Plaintiff mischaracterizes the language of the covered claims by intimating that the DRP *limits* Defendants' covered claims to breach of confidentiality. However, the DRP in actually provides that "claims relating to or arising out of the employment relationship that . . . the Company may have against an employee, *including* breach of confidentiality[.]" (DRP at 12 (emphasis added).) As noted by the California Supreme

Court, "[i]t is not particularly remarkable that the agreement's list of examples might highlight certain types of claims . . . . The examples do not alter the substantive scope of the agreement, nor do they render the agreement sufficiently unfair as to make its enforcement unconscionable." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1249, 367 P.3d 6, 15 (2016). Similarly, here, the DRP does not provide an exhaustive list of all of the types of claims that Defendants can bring against an employee for work-related conduct.[6]

Having found the covered claims mutual, the Court must still analyze the excluded claims to determine if those excluded are to the benefit of Defendants without reasonable justification. *See Ronderos*, 114 F.4th at 1094. The DRP excludes claims arising under the Employment Retirement Income Security Act of 1974, workers' compensation, and the National Labor Relations Act, which would be brought by employees. (DRP at 12.) Additionally, the DRP excludes "[c]laims that seek to establish, modify or object to the Company's policies or procedures, except claims alleging discriminatory application of such policies or procedures," which would also be brought by employees. (*Id.*) The only excluded claims typically brought by employers are claims involving patents, trademarks, trade secrets, or other intellectual property and claims against an individual employee that do not involve conduct within the scope of the employee's employment. (*Id.*)

Plaintiff points only to the exclusion of intellectual property claims without addressing the four other categories of claims that would be brought by employees. (*See* Doc. No. 39 at 17.) However, considering the list of excluded claims in totality, the Court does not find that there is a lack of mutuality with regard to the excluded claims either. *See Gutierrez v. Sea World LLC*, No. 14-CV-0131-BTM-JMA, 2014 WL 4829087, at *5 (S.D. Cal. Sept. 26, 2014) ("The DRP's language makes clear that both the employer and the employee's claims arising from or related to the employment relationship would be subject

---

[6]     The only case to which Plaintiff analogizes—*Navas v. Fresh Venture Foods, LLC*, 85 Cal. App. 5th 626 (2022)—addresses a starkly different arbitration agreement, one that limited covered claims to *only* those brought by employees. *See Navas*, 85 Cal. App. 5th at 636.

to the DRP in the same capacity. The excluded categories include, e.g., intellectual property claims, ERISA claims, worker's compensation claims, and claims objecting to the company's policies and procedures (except those alleging discriminatory application of such policies). Only the intellectual property claims are claims likely to be brought by the employer. The other excluded claims are more likely to be brought by an employee.").

Turning to the mutuality of the IPCA, Plaintiff claims the IPCA is not mutual because it "requires employees to agree that: (1) any breach of its terms 'will cause immediate or irreparable damage to the Company'; (2) 'such damage may be extremely difficult or impossible to measure precisely'; (3) 'there is no adequate remedy at law for such failure'; and (4) 'upon any breach or violation . . . the Company shall be entitled, as a matter of right . . . to []injunctive relief in any court of competent jurisdiction.'" (Doc. No. 39 at 28 (quoting IPCA § 9; citing *Alberto*, 91 Cal. App. 5th at 492).) Defendants respond that "the DRP and I[PC]A, together, contain only *one* of the provisions that *Alberto* identified as unconscionable," namely the agreement regarding the existence of irreparable injury. (Doc. No. 42 at 7–8 (emphasis in original).)

California courts have found that:

> [P]rovisions that allow employers to seek a preliminary injunction outside of arbitration for breach of a confidentiality agreement are not, by themselves, unconscionable, simply because they primarily benefit employers[; however,] additional provisions that waive the employer's need to obtain a bond before seeking an injunction, waive the employer's need to show irreparable harm, and require an employee to consent to an immediate injunction *are* unconscionable[ because t]hey exceed the legitimate margin of safety for the employer and are not mutual.

*Alberto*, 91 Cal. App. 5th at 492; *see also Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 451 (2020); *Gurganus v. IGS Sols. LLC*, 115 Cal. App. 5th 327, 338 (2025); *Silva v. Cross Country Healthcare, Inc.*, 111 Cal. App. 5th 1311, 1329 (2025).

Defendant provided no reasonable justification based on business realities for the IPCA to grant Defendant relief from having to "establish[] all of the essential elements for the issuance of an injunction." *See Lange*, 46 Cal. App. 5th at 451. Accordingly, that

provision of the IPCA is substantively unconscionable, albeit to a lesser degree than the combined provisions at issue in *Alberto* and other cited cases. *See, e.g. Gonzalez v. CVS Health Corp.*, 781 F. Supp. 3d 1006, 1010 (N.D. Cal. 2025) (finding substantively unconscionable provisions permitting the company but not the employee to an injunction without showing irreparable harm and without posting a bond); *Ly*, 757 F. Supp. 3d at 1048 (same).

### iii.    Level 1 Procedures Imposed on Employees

Plaintiff also asserts the DRP is a "one-sided shield" that requires employees to agree to use "an employer's internal dispute procedures as a prerequisite to arbitration" even though "employees do not know what they are agreeing to." (Doc. No. 39 at 18 (relying on *Navas*, 85 Cal. App. 5th at 636).) Specifically, Plaintiff argues that the "DRP does not provide employees with any means of finding out what the Level 1 procedures are for their specific locations" before having to agree to the terms. (*Id.*)

Plaintiff relies only on a quote from the DRP's Overview. (*See id.* (quoting DRP at 9).) Absent from Plaintiff's argument on this point is any discussion, analysis, or even reference to the section entitled Procedural Rules for Level 1 Local Management Review.

As Plaintiff notes, the DRP states that "Level 1 problem-solving procedures vary according to the needs of the individual Company location. Therefore, each location has implemented its own procedures for Local Management Review." (DRP at 14.) However, the DRP provides "minimum requirements" that apply across all locations:

> Using the DRP Notice of Dispute form, the Employee shall submit the dispute to the local Human Resources department or designated HR management for that department or facility. The Employee should provide a detailed account of his/her claim(s), the individuals involved, and a desired outcome. The Employee may retain a copy of the completed document and keep a record of the date and names of the individuals to whom the document is submitted. The local HR manager is responsible for immediately forwarding a copy of the form to the DRP Administrator.

(DRP at 14.) The DRP also sets forth details regarding timeliness of Level 1 claims and presence of attorneys to further explain the process. (*Id.*) Completely inapposite to the

DRP, the agreement in *Navas* set forth that the employee was to "utiliz[e] the internal complaint procedures" but "those procedures [we]re not described" in the agreement. *Navas*, 95 Cal. App. 5th at 636.

The Court finds the DRP sufficiently details the required procedures such that the requirement to participate in the Level 1 Local Management Review is not a one-sided shield keeping employees in the dark.[7] The provision is not unconscionable on this ground.

### iv.    "Peek" at Employees' Claims

Plaintiff argues that the DRP is unconscionable because "it provides the employer with a 'free peek' at the employee's case, 'thereby obtaining an advantage if and when [the] plaintiff were to later demand arbitration.'" (Doc. No. 39 at 18 (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010); then citing *Navas*, 85 Cal. App. 5th at 636; *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282 (2004)).)

The courts in *Pokorny*, *Navas*, and *Nyulassy* all found unconscionable provisions in which employees, but not employers, were required to submit their claims to a non-binding, internal dispute resolution process, without the benefit of a neutral decision-maker, prior to submitting their claims to arbitration. *See Pokorny*, 601 F.3d at 998–99; *Navas*, 85 Cal. App. 5th at 636; *Nyulassy*, 120 Cal. App. 4th at 1282–83.

In contrast, here, both Defendants and employees are required to submit any covered claims to non-binding mediation at Level 2. (*See* DRP at 15.) The DRP sets forth the process for the parties to "select a mediatory by mutual agreement." (*Id.* at 16.) Moreover, if the parties "cannot agree to the selection of a mediator, the DRP Administrator will request that the [American Arbitration] Association appoint a mediator in accordance with its procedures." (*Id.*) Because the DRP sets forth a mutual requirement for non-binding mediation before a neutral mediator prior to arbitration, the Court finds Plaintiff's reliance on *Pokorny*, *Navas*, and *Nyulassy* inapposite and the provision not unconscionable.

---

[7]    In fact, Plaintiff's utter failure to address the *actual* provision about which he selectively quotes the introduction raises questions about whether Plaintiff's argument on this point is made in good faith.

### v.    Time Restrictions

Plaintiff alleges the DRP imposes unreasonable time restrictions on employees in three ways. (Doc. No. 39 at 19–21.) First, Plaintiff asserts that by permitting an employee to bring a covered claim to Level 1 within the statute of limitations, the employee could miss the statute of limitations to file the claim in court if the DRP Administrator determines it is in fact an excluded claim. (*Id.* at 20.) On the other end of the spectrum, Plaintiff argues that requiring an employee to initiate subsequent levels of the DRP no more than 30 days after the previous level's determination "could result in shortening the statute of limitations from several years to just several months." (*Id.*) Additionally, Plaintiff asserts that the 30-day turn around will impact the employee's ability to find an attorney for subsequent levels and to bring newly identified claims. (*Id.*) Either way, Plaintiff argues, "these mandated time limitations could result in shortening the statute of limitations from several years to just several months." (*Id.* (citing *Ramirez*, 16 Cal. 5th at 502).) Third, Plaintiff argues that "the DRP is set up in such a way to deprive employees of their rights to have an investigation conducted by the [Department of Faire Employment and Housing ('DFEH')] before the employee is required to pursue [Fair Employment and Housing Act ('FEHA')] claims in arbitration" because "it is highly unlikely that the 30 days employees are given after an unsuccessful mediation to submit their dispute to arbitration at Level 3 would be sufficient for an administrative claim to be filed with and fully investigated by the DFEH."[8],[9] (*Id.* at 21.)

In response, Defendants state "the DRP does not shorten limitations periods" because "there are no time limits on submitting a dispute to Level 1," and if an employee intends to proceed beyond Level 1 "the only 'untimely' claim is one that would also be

---

[8]    In July 2022, DFEH changed its name to the Civil Rights Department ("CRD"). Cal. Civ. Rights Dep't, *About Civil Rights Department (CRD)* (2025), https://calcivilrights.ca.gov/aboutcrd/ [https://perma.cc/GK2J-VYZP]. The parties use both acronyms in their briefing to refer to the same state administrative agency.

[9]    The Court notes that, despite Plaintiff not bringing any FEHA claims against Defendants in the instant action, Plaintiff raises no less than five unconscionability defenses on the basis of FEHA.

untimely in a civil court." (Doc. No. 42 at 10.) Further, Defendants assert that Plaintiff's argument regarding the time limitations' impact on pursuing administrative charges is a "red herring" that incorrectly puts into conflict "the DRP timings requirements for *requesting* each Level" with "the employee's rights to pursue an administrative charge for claims such as wage theft, discrimination, or retaliation." (*Id.* at 10–11.) Defendants note that "under the DRP, a timely request for Level 1 could be made *at any time* after the charge was filed, including after the employee had engaged a lawyer," and "[t]he request for Level 1 would still be timely under the DRP because the limitations period would not have expired (due to tolling)." (*Id.* at 11.)

The DRP provides that "[t]here are no time limits for an Employee's submission of disputes at Level 1[; h]owever, if the Employee intends to submit a covered claim to Levels 2 or 3," (DRP at 14) then "the dispute must have been submitted to Level 1 within 180 days of the date the dispute arose or before the expiration of the statute of limitations applicable to the alleged unlawful conduct or violation of law, whichever is longer" (DRP at 13). Finally, any request for Level 2 Nonbinding Mediation or Level 3 Binding Arbitration must be made within 30 days of the date of the notice or determination for the prior level. (*Id.*)

Plaintiff reliance on *Ramirez*'s affirming the unconscionability of a filing limit is unpersuasive because there the employee's deadline to raise a FEHA claim with his employer was limited from three years (the FEHA statute of limitations) to one year (the deadline to submit an administrative claim to DFEH). *Ramirez*, 16 Cal. 5th at 502. The California Supreme Court found the filing limitation substantively unconscionable because it "substantially shorten[ed] the time for fully pursuing a FEHA claim and may preclude a DFEH investigation." *Id.* Here, however, the deadline to initiate the Level 1 process is the *longer* of either 180 days from when the dispute arose or the statute of limitations for the relevant civil action. As such, the DRP does not necessarily shorten the statute of limitations, in contrast to *Ramirez* and all the California Courts of Appeal decisions it discusses. If an employee *chooses* to pursue Level 1 *prior to* filing an administrative claim

with CRD, then the limitations for requesting Level 2 and 3 may arise before the statute of limitations would have run. However, those choices—as is the choice of when to file a civil lawsuit—fall within the employee's power. Plaintiff's concerns about the panoply of decisions, some more strategic than others, that one who seeks potential legal action faces does not make the limitations in this DRP per se unreasonable and Plaintiff has not demonstrated that the limitations to request Level 2 or Level 3 review "would effectively eliminate any meaningful participation by DFEH." *See Ramirez*, 16 Cal. 5th at 501. Accordingly, because the DRP does not shorten the limitations period or preclude meaningful participation by CRD, the Court finds the DRP does not impose unreasonable time restrictions on employees. Thus, this provision is not unconscionable.

### vi.    Adequacy of Discovery

Plaintiff next argues the DRP limits discovery to the point it is "insufficient for employees to vindicate their statutory rights under the Labor Code and FEHA." (Doc. No. 39 at 22–23.) Specifically, Plaintiff points to the number of depositions, the number of interrogatories, the scope of what is discoverable, and that the cost of document production is to be borne by the party serving the request. (*Id.*) Plaintiff further argues that "the DRP gives the arbitrator unfettered discretion over how much discovery does or does not take place" because "upon a showing of good cause, the arbitrator *may grant* either party's request for additional or alternative discovery above or beyond that which the DRP expressly provides." (*Id.* at 23.)

Defendants counter that the "DRP's discovery provisions are sufficient" because other courts have found similar limitations sufficient. (*See* Doc. No. 42 at 11 (citing *Sheelit v. Amerisave Mortgage Corp.*, 2024 WL 5317305 (C.D. Cal. Oct. 21, 2024); *Siglain v. Trader Publ'g Co.*, 2008 U.S. Dist. LEXIS 92095 (N.D. Cal. July 25, 2008)).)

"The assessment of whether a discovery clause is unconscionable should focus on . . . factors includ[ing] the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery,

and the arbitrator's authority to order additional discovery." *Ramirez*, 16 Cal. 5th at 506.

Plaintiff's emphasis on the permissive language granting the arbitrator authority to order additional discovery in attempt to characterize possible declination of *additional* discovery as unconscionable is misplaced. The California Supreme Court has clearly held that "[a]llowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation." *Id.* In fact, "giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy[-of-discovery] concern can be addressed." *Id.*

Plaintiff fails to provide any analysis as to why the discovery provided for in the DRP is inadequate. (*See* Doc. No. 39 at 22–23 (listing permissible discovery and cursorily stating that it is insufficient).) Instead, Plaintiff cites to *Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494 (2008), with a parenthetical summarizing that the court "[affirmed the lower court's finding that] an arbitration agreement that allowed each party to take only one deposition in addition to expert depositions and document requests, with the right to additional discovery by order of the arbitrator 'upon a showing of substantial need', to be inadequate to vindicate statutory rights under FEHA." (Doc. No. 39 at 23 (quoting *Ontiveros*, 164 Cal. App. 4th at 511–14).) Despite Plaintiff's assertion to the contrary, the California Supreme Court in *Ramirez* expressly disapproved of the reasoning the *Ontiveros* court used to assess and deem unconscionable the discovery provision. *See Ramirez*, 16 Cal. 5th at 505–06 ("The Court of Appeal is correct that several appellate decisions have assessed the unconscionability of discovery provisions in the manner described. (See . . . *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal. App. 4th 494, 513–514 . . . .) This approach to addressing unconscionability challenges to discovery clauses in arbitration agreements seems to be taking hold, and it clearly looks to post-contract formation circumstances. We disapprove this line of reasoning."). Even if the analysis of *Ontiveros* on this issue had not been expressly disapproved of, there the standard for additional discovery was substantial need where here it is good cause.

"[S]howing 'good cause' is not a shocking or oppressive threshold." *Gutierrez*, 2014 WL 4829087, at *5. The Court finds the DRP's discovery provision is not unconscionable.

### vii.    Confidentiality Requirement

Plaintiff also asserts the DRP imposes an unlawful confidentiality requirement because, "[i]n the employment context, confidential arbitration 'tilts the scales of justice' against potential victims of abuse 'by denying them access to any information about other claims' against the wrongdoer." (Doc. No 39 at 23–24 (quoting *Haydon v. Elegance at Dublin*, 97 Cal. App. 5th 1280, 1290 (2023)).) Plaintiff argues *Haydon* is "on point" because "the Court of Appeals [sic] found a similar confidentiality provision barring the parties from 'discols[ing] [sic] the existence, content or results of the arbitration' 'to be unconscionable to a high degree.'" (Doc. No. 39 at 24 (quoting *Haydon*, 97 Cal. App. 5th at 1290) (alterations and errors in original).)

Without addressing Plaintiff's reliance on *Haydon*, Defendants assert that the Ninth Circuit has held that "a confidentiality provision *identical* to the DRP's provision was not substantively unconscionable." (Doc. No. 42 at 11–12 (citing *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017).)

The DRP's confidentiality provision in its entirety provides:

> All aspects of the arbitration including without limitation the record of the proceeding, are confidential and shall not be open to the public except: (a) to the extent that both parties agree otherwise in writing; (b) as may be appropriate in any subsequent proceedings between the parties; or (c) as may otherwise be appropriate in response to a governmental agency request pursuant to, or as otherwise required by, law.

> At the request of either party, or upon his or her own initiative, the Arbitrator shall issue protective orders appropriate to the circumstances and shall enforce the confidentiality of the arbitration as set forth in this Article 19.

(DRP at 25.)

The Court finds the provision "substantially identical" to a provision upheld by both the Ninth Circuit in *Poublon* and by the California Court of Appeal in *Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 398 (2014). In those cases, as in the instant

action, the confidentiality provisions "require that the arbitration, including the record of the proceeding, be confidential, and . . . include the same enumerated exceptions." *See Poublon*, 846 F.3d at 1266 (relying on *Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal. App. 4th at 408).

Despite Plaintiff's summary conclusion that the provisions are similar, the provision in *Haydon* was substantially more restrictive than that at issue here. *See Haydon*, 97 Cal. App. 5th at 1290. In fact, the *Haydon* court expressly distinguished the confidentiality provisions at issue in *Sanchez* as "narrower provisions requiring only the proceedings themselves to remain confidential." *Id.*

Having found the provision at issue identical to those in upheld by both the Ninth Circuit and California Courts of Appeal, the Court finds that the confidentiality provision at issue in the DRP is not unconscionable.

### viii.    Employees' Statutory Rights under FEHA

Plaintiff contends "the DRP purports to waive an employee's statutory right under FEHA to the remedy of reinstatement" because it permits the arbitrator to grant the terminated employee reasonable front pay at the request of the employer without requiring the employer "to show that there were legitimate, nondiscriminatory reasons that would have led the employer to terminate the employee in any event," which "runs afoul of FEHA[.]" (Doc. No. 39 at 24–25.)

It is clear from *Armendariz* and its progeny that where an arbitration clause excludes remedies accessible in court, such as reinstatement for a FEHA claim, the provision will be found substantive unconscionable. *See Armendariz*, 24 Cal. 4th at 104 (concluding an arbitration provision that required the employee to expressly disclaim "any other remedy, at law or in equity, including but not limited to reinstatement and/or injunctive relief" was "contrary to public policy and unlawful" when applied to statutory claims, like FEHA). Following *Armendariz*, California Courts of Appeal have similarly found unconscionable arbitration agreements that expressly proscribe plaintiffs from obtaining remedies otherwise available for statutory claims. *See, e.g.*, *Ramos v. Superior Ct.*, 28 Cal. App. 5th

1042, 1060 (2018), *as modified* (Nov. 28, 2018) (holding a provision unenforceable where it "preclude[d] the arbitrators from providing remedies that would otherwise be available in a court of law" for the plaintiff's FEHA and Equal Pay Act claims).

However, unlike the provisions at issue in *Armendariz* and *Ramos*, the DRP does not preclude reinstatement as relief available to Plaintiff in arbitration.

> Upon a finding that a party has sustained his or her burden of persuasion, the Arbitrator shall, except as provided by Article 13 (Authority of the Arbitrator) and Article 16 below (Front Pay Option Instead of Reinstatement), have the same power and authority as a judge or a jury in a court trial to grant any relief available under applicable law in the relevant jurisdiction.
>
> . . .
>
> If the Arbitrator orders the reinstatement of a terminated Employee, there may be situations where the Employee does not want to return to work or the Company does not wish to reinstate the Employee. In such situations, the Arbitrator, at the request of either party, shall issue a supplementary award granting the terminated Employee reasonable front pay instead of reinstatement, in accordance with the applicable state or federal law.

(DRP at 23–24.)

Plaintiff fails to establish the unconscionability of a provision such as the one at issue here where reinstatement is relief within the arbitrator's authority to award but subject to replacement with reasonable front pay at the option of either party. Directly on point, however, the district court in *Asher v. E! Ent. Television, LLC* found a provision substantially identical to the one at issue here to not be substantively unconscionable in the face of the same arguments asserted by Plaintiff. No. CV 16-8919-RSWL-SSX, 2017 WL 3578699, at *7 (C.D. Cal. Aug. 16, 2017) ("Plaintiff misinterprets this provision as a limitation on remedies. Unlike arbitration agreements that bar recovery to reinstatement, injunctive relief, or other remedies provided by state and federal law, the provision here does not entirely foreclose avenues to certain damages and relief. Rather, the employee may receive reinstatement, but if either party would prefer reasonable front pay, they may pursue this alternative option with the arbitrator through evidence and supplemental arguments.") (citation omitted).

Moreover, it is not clear to the Court that Plaintiff's characterization of reinstatement as *mandated* is accurate. The court in *Ramos* used permissive—not prescriptive—language to explain that, if a plaintiff prevails on statutory FEHA causes of action, "she *may* be entitled to a variety of remedies, including backpay, front pay, or both, reinstatement, or punitive damages." *Ramos*, 28 Cal. App. 5th at 1060 (emphasis added); *see also Asher*, 2017 WL 3578699, at *7 ("Plaintiff does not show that reinstatement is a required remedy under FEHA; rather, when 'feasible,' it is 'the preferred remedy' in Title VII intentional discrimination cases."). Plaintiff points to *Harris v. City of Santa Monica*, 56 Cal. 4th 203 (2013), as stating "the only circumstances under which a Company may be relieved of its obligations to reinstate wrongfully terminated employees." (Doc. No. 39 at 25.) However, the *Harris* court held "when a jury finds that unlawful discrimination was a substantial factor motivating a termination of employment, and when the employer proves it would have made the same decision absent such discrimination, a court may not award damages, backpay, or an order of reinstatement." *Harris*, 56 Cal. 4th at 211. Nowhere in the ruling does the California Supreme Court state that this is the only circumstance where reinstatement is not required. *See generally id.* In fact, nowhere in the opinion does the California Supreme Court state that reinstatement is ever *required* or a *statutory right* as Plaintiff characterizes it.[10] *See generally id.*

Accordingly, the Court finds Plaintiff has failed to meet his burden in demonstrating that the remedy provisions are substantively unconscionable.

### ix. Costs Unique to Arbitration

Next, Plaintiff states the DRP "unconscionably subjects employees to costs that are unique to arbitration" because "employees would not be subject to the imposition of attorney's fees and costs for failing to comply with requirements of confidentiality if he or

---

[10]    The remaining case cited by Plaintiff—*Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 260 Cal. Rptr. 3d 580 (2020)—addresses neither FEHA nor limitations on relief accessible in arbitration and is only relied upon for the general proposition that advanced waiver of an employee's statutory rights is substantively unconscionable. As such, the Court does not address it further.

she were free to bring the action in court[.]" (Doc. No. 39 at 25–26.)

Defendants counter that, because "a civil court may impose monetary sanctions for unreasonable delay, failure to cooperative in discovery, and violating a confidentiality or protective order," any monetary sanctions an arbitrator may award pursuant to the DRP's sanction provision "are *not* costs unique to arbitration." (Doc. No. 42 at 12 (emphasis in original).)

The relevant DRP sanctions provision states:

The Arbitrator may sanction either party by awarding the other party reasonable attorneys' fees and costs associated with production of witnesses or proof; upon a finding that the other party (a) engaged in unreasonable delay, (b) failed to cooperate in discovery, or (c) failed to comply with requirements of confidentiality.

(DRP at 24.)

Plaintiff improperly conflates ordering payment of attorneys' fees as a discovery sanction with the award of attorneys' fees to the prevailing party. Relying on the California Supreme Court's ruling in *Ramirez*, Plaintiff asserts that "allowing the Company to recover attorney's fees in a FEHA action where the arbitrator has made no finding of frivolity, groundlessness, or continued litigation also undermines the public policy embodied in FEHA's asymmetric fee shifting rule." (Doc. No. 39 at 26 (citing *Ramirez*, 16 Cal. 5th at 508).) In *Ramirez*, the court held that a provision requiring an employee who opposes the arbitration agreement in court to pay the employer's attorney's fees was unconscionable because it required the employee to bear an expense "only in an arbitral setting." *Ramirez*, 16 Cal. 5th at 508 (citing *Armendariz*, 24 Cal. 4th at 111).

Unlike *Ramirez*, the sanction provision here does not impose a cost unique to arbitration. In federal court, plaintiffs may be ordered to pay the defendant's attorney's fees incurred in relation to the plaintiffs' violation of a discovery order, such as a protective order. *See* Fed. R. Civ. P. 37(b)(2)(C) (authorizing the court to order "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order], unless the failure was

substantially justified or other circumstances make an award of expenses unjust"); *see also, e.g.*, *Brewer v. Leprino Foods Co., Inc.*, No. CV-1:16-1091-SMM, 2019 WL 356657, at *11 (E.D. Cal. Jan. 29, 2019) (awarding attorney's fees pursuant to Rule 37 to the defendant in a FEHA action incurred due to the plaintiff's behavior); *McLaurin v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042, 1047 (C.D. Cal. 2016) ("[T]he Policy's provisions requiring Plaintiff to pay a $100 filing fee and imposing attorney fees as sanctions for discovery abuses aren't unconscionable[ in a FEHA action], as Plaintiff could bear those costs in a judicial forum as well.").

Moreover, the DRP requires Defendants to pay the costs unique to arbitration, including "(a) any filing and other administrative fees required by the Association; (b) the Arbitrator's fees and reasonable travel expenses; (c) the cost of renting an arbitration hearing room; (d) the Employee's salary or wages up to a maximum of seven hearing days (if still employed by the Company) for the time spent at the arbitration hearing; and (e) the salary or wages of current Employees called as witnesses for the time spent at the arbitration hearing up to a maximum of two hearing days." (DRP at 25.)

Accordingly, the Court finds that the sanctions provision does not unconscionably require Plaintiff to incur a cost unique to arbitration.

### x.    Discretion in Awarding Attorney's Fees

Plaintiff argues that the DRP's fee clause is unconscionable because it "gives the arbitrator discretion in the determination of whether to award reasonable attorney's fees to a prevailing employee." (Doc. No. 39 at 26–28.) Defendants respond that "the DRP does not diminish the employee's rights to recover fees" because it permits the arbitrator to award attorneys' fees to the employee "as provided under applicable law." (Doc. No. 42 at 12.)

The relevant provision of the DRP provides: "Each party shall bear all costs normally associated with litigation including but not limited to, its own experts' and/or attorneys' fees. The Arbitrator may award costs, including reasonable experts' and/or attorneys' fees, to the Employee or the Company as provided under applicable law." (DRP at 18.)

24-cv-01937-AJB-SBC

"Several courts have held an arbitration provision is substantively unconscionable when it purports to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails on a Labor Code claim for unpaid wages and other benefits, or on a discrimination claim under the California Fair Employment and Housing Act." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 251 (2016) (collecting cases). Here, Plaintiff points to two specific statutes FEHA and California Labor Code § 1194(a). "FEHA grants a trial court *discretion* to award 'reasonable attorney's fees and costs' to 'the prevailing party.'" *Ramirez*, 16 Cal. 5th at 507 (emphasis added). California Labor Code § 1194 states that, upon prevailing on minimum wage and overtime claims, an employee "is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194(a).

Plaintiff relies heavily on California Court of Appeal cases where the arbitration agreement included a pure fee splitting provision. (*See* Doc. No. 39 at 26–28 (relying on *Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292 (2022); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227 (2016); *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695 (2013), *as modified* (Apr. 26, 2013)).) However, the provisions at issue in those cases did not provide the arbitrator with discretion to award attorney's fees as the DRP here does. *See Serpa*, 215 Cal. App. 4th at 709–10 ("Had the agreement to arbitrate been silent on the question of attorney fees, or provided for the recovery of attorney fees in an appropriate circumstance or in accordance with applicable law, we might agree with the CSI parties. However, the attorney fee provision is not ambiguous. It expressly requires each party to bear his, her or its own attorney fees regardless of the type of action brought. It provides for this approach even while expressly stating the agreement governs actions for harassment and discrimination. For that reason, the provision limiting the recovery of attorney fees is unenforceable."); *Carbajal*, 245 Cal. App. 4th at 251 ("The arbitration provision's plain language requires the parties to be responsible for their own attorney fees without any exceptions. Nothing in the provision's language suggests the parties

intended to limit or qualify this provision by also granting the arbitrators broad authority to award all types of relief authorized by law.").

Additionally, Plaintiff relies on California Court of Appeal cases where the arbitration provisions mandated the prevailing party be awarded attorney fees, even if the prevailing party is the defendant in a FEHA action, which is similarly inapposite to the DRP. *See Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1249 (2011) ("Here, the agreements provide that the prevailing party is entitled to attorney fees, without any limitation for a frivolous action or one brought in bad faith."); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 394–95 (2010), *disapproved of by Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 367 P.3d 6 (2016) ("In contrast to case law under FEHA, the agreement does not limit Curexo's right to recover to instances where Trivedi's claims are found to be 'frivolous, unreasonable, without foundation, or brought in bad faith.' Thus, enforcing the arbitration clause and compelling Trivedi to arbitrate his FEHA claims lessens his incentive to pursue claims deemed important to the public interest, and weakens the legal protection provided to plaintiffs who bring nonfrivolous actions from being assessed fees and costs.").

Finally, Plaintiff's reliance on *Gentry v. Superior Court*, 42 Cal.4th 443 (2007), is unavailing because the issue before the California Supreme Court was "whether class arbitration waivers in employment arbitration agreements may be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay pursuant to Labor Code sections 500 et seq. and 1194 allegedly have been violated," not whether the attorney's fees provision of the arbitration agreement was unconscionable. *Gentry*, 42 Cal. 4th at 450, 470–71. In dicta, the *Gentry* court characterized "a provision that parties will 'generally' be liable for their own attorney fees, with the arbitrator having the 'discretion' to award the employee attorney fees," as a "significant disadvantage[]" when compared to "section 1194's provision that a prevailing employee 'is entitled to' reasonable attorney fees and costs." *Id.* at 574. Not every provision that benefits the stronger party to the disadvantage of the weaker party is necessarily overly harsh, unduly oppressive, so one-

sided as to shock the conscience or unfairly one-sided. *See Magno*, 1 Cal. App. 5th at 287–88 (internal quotation marks omitted). Such a provision may be to Plaintiff's disadvantage in the context of California Labor Code minimum wage and overtime claims, but the Court is not persuaded that Plaintiff has met his "rigorous and demanding" burden of demonstrating "the requisite degree of unfairness beyond merely a bad bargain" to support a finding of unconscionability. *See Valencia Holding Co.*, 61 Cal. 4th at 912.

### xi.    IPCA's Forum Selection and Governing Law Clauses

Finally, Plaintiff argues the forum selection and choice of law clauses in the IPCA violate California Labor Code § 925 because the IPCA sets the governing law as "the internal laws of the State of Florida and the applicable federal laws of the United States" and sets the state and federal courts in Orlando, Florida as the venue. (Doc. No. 39 at 29 (quoting IPCA § 12).)

Pursuant to California Labor Code § 925, "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . (1) [r]equire the employee to adjudicate outside of California a claim arising in California[ or] (2) [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925(a). "Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." Cal. Lab. Code § 925(b).

Considering that Plaintiff is a California resident who was employed by Defendants in San Diego, California, and considering that Plaintiff signed the IPCA as a condition of his employment, the choice of law and forum selection provisions of the IPCA violate California Labor Code § 925 and thus are void. *See Sheelit*, 754 F. Supp. 3d at 1012 ("In line with this public policy embodied in Section 925, courts in California have also recognized that agreements requiring employees to pursue arbitration in a distant forum often impose too great a burden and are substantively unconscionable.") (cleaned up).

However, none of Plaintiff's claims pertain to or arise from the IPCA. Rather, they are claims covered by the DRP, which has its own forum selection clause. The DRP states that "[u]nless the parties agree otherwise, the arbitration hearing shall take place within 25 miles of the work." (DRP at 19.) As such, arbitration for Plaintiff would take place in California, absent the parties' agreement to the contrary.

### 3.    Severability

No provisions of the DRP itself are substantively unconscionable; however, one provision of the IPCA is substantively unconscionable, *see supra* § III.2.B.ii, and another is void, *see supra* § III.2.B.xi. Having so found, the Court turns to whether the offending provisions are severable.

Defendants request the Court strike any clause found unenforceable, enforce the remainder of the DRP, and compel individual arbitration because "the contract is not 'permeated' with unconscionability." (Doc. No. 42 at 14.)

Plaintiff, on the other hand, asserts that "the defects in the DRP indicate that Defendant[s] engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage, the interest of justices would not be furthered through severance or restriction." (Doc. No. 39 at 31.) Based on Plaintiff's alleged "show[ing of] a heightened degree of procedural unconscionability and twelve (12) substantively unconscionable provisions," Plaintiff requests the Court "decline to sever the offending provisions and deny Defendant[s' m]otion." (*Id.*)

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results." *Ramirez*, 16 Cal. 5th at 513; *see also* Cal. Civ. Code § 1670.5(a). "Though the 'statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement,' it 'also appears to contemplate the latter course only when an agreement is 'permeated' by

unconscionability.'" *Ramirez*, 16 Cal. 5th at 513 (quoting *Armendariz*, 24 Cal. 4th at 122); *see also Ronderos*, 114 F.4th at 1099 ("California law provides, as a general rule, that unlawful contractual provisions should be severed and the remainder of the contract enforced.").

Here, the only offending provisions are in the IPCA, not the DRP. Considering that Plaintiff's claims to not implicate the IPCA and the offending provisions are not "the central purpose of the contract," the unconscionable and void provisions "can be extirpated from the contract by means of severance[,]" and, as such, severance is appropriate. *See Armendariz*, 24 Cal. 4th at 124.

### 4.    Conclusion

Having severed the two provisions of the IPCA found to be problematic, the Court finds that the remaining agreement to arbitrate is valid and enforceable. Because Plaintiff's individual claims fall within the scope of the agreement, those claims are compelled to arbitration pursuant to the DRP. Having so compelled Plaintiff's individual claims and having found the DRP silent as to class arbitration, Plaintiff's class claims are dismissed. Plaintiff's UCL claim is excluded from the DRP's scope and, thus, remains.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Defendants' motion. Specifically, the Court **GRANTS** Defendants' motion to compel arbitration of Plaintiff's individual claims, **GRANTS** Defendants' motion to dismiss Plaintiff's class claims, and **DENIES** Defendants' motion to dismiss Plaintiff's UCL claim. Plaintiff must arbitrate his individual claims pursuant to the terms of the DRP. Plaintiff's UCL claim for injunctive relief is stayed pending the resolution of the arbitration proceedings. The Court further **ORDERS**:

1.    The instant action is **STAYED** pending arbitration.

2.    The parties must file a joint status report addressing the status of arbitration is due **no later than <u>March 10, 2026</u>**, with specific details including the date when the parties submitted the matter to arbitration.

3. **Every sixty days thereafter**, the parties must file joint status reports informing the Court about the status of arbitration, including specific details regarding subsequent dates, any changes to dates, and actions the parties are taking to facilitate the process.

**IT IS SO ORDERED.**

Dated: January 6, 2026

Hon. Anthony J. Battaglia
United States District Judge

24-cv-01937-AJB-SBC